UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| | Case No.  1:21-cv-748 |
| JEFF SPANO, DEBBIE SPANO, & C.S., a minor child, | PLAINTIFFS' COMPLAINT FOR: |
| Plaintiffs, | NEGLIGENCE;<br>STRICT PRODUCT LIABILTY (Design Defect (Risk/Benefit & Consumer Expectation); |
| v. | STRICT PRODUCTS LIABILTY (Failure to Warn);<br>EXPRESS WARRANTY; |
| WHOLE FOODS, INC., and DOES 1-50 | IMPLIED WARRANTY;<br>LOSS OF CONSORTIUM; |
| Defendants. | VICARIOUS LIABILITY.<br>DECEPTIVE ACTS, N.Y. GEN LAW 349 ET. SEQ. |
| | DEMAND FOR JURY TRIAL |

Plaintiffs, DEBBIE AND JEFF SPANO, individual and as next friend of C.S., a minor, (hereinafter collectively referred to as "SPANO") complain of Defendants WHOLE FOODS, INC. (hereinafter referred to as "WHOLE FOODS") for the claims stated herein in an amount in excess of $75,000, and allege:

## I.

## JURISDICTIONAL ALLEGATIONS

1. This U.S. District Court enjoys personal jurisdiction over Defendant WHOLE FOODS because that entity maintains its national headquarters within the Western District and is domiciled in the Western District. Venue is therefore proper in the Western District pursuant to 28 U.S.C. § 1391(b)(2). SPANO are

residents of the State of New York, and who allege claims and damages herein, in excess of $75,000.00.  This court enjoys original jurisdiction over this matter and the parties thereto pursuant to 28 U.S.C. § 1332(a)(1).

2.   Plaintiffs do not know the names, identities or domicile of the following potential parties who may be subsequently joined in this matter when their identity is discovered:   a. the WHOLE FOODS Associates that prepared and labelled the cupcakes ingested by the Plaintiffs by which WHOLE FOODS may be held responsible through *respondeat superior*; b. the manufacturer, contractors or person(s) responsible for the WHOLE FOODS labelling machines, training thereon, or those person or entities other than WHOLE FOODS responsible through policy directives or otherwise for the events and damages set forth below. Plaintiff will timely seek to join such parties upon the discovery of their respective identities.

3.   Each Defendant was at all times herein mentioned acting within the course and scope of their employment, alter-ego status, commonly controlled enterprise status, parent-controlled subsidiary status, joint-venturer status, employee status, contractor status, vendor status and/or agency status with each other named or subsequently joined Defendant.

## II.
## COMMON ALLEGATIONS

4.   Plaintiffs incorporate by this reference the allegations of the preceding paragraphs as though fully set forth herein.

5. On or about September 7, 2018, Defendant WHOLE FOODS operated a grocery store and commercial bakery at the Port Chester, New York location.

6. The WHOLE FOODS commercial bakery manufactured, baked, packaged, and sold cupcakes labelled as vegan. The WHOLE FOODS bakery would print and affix adhesive labels for the vegan product packaging listing the eight or more most common ingredients to which humans are allergic.

7. Minor-Plaintiff, C.S., then a 7-year-old child, suffered from food allergies, including life-threatening allergies to dairy, tree nuts, and fish.

8. On prior occasions, Plaintiff, DEBBIE SPANO, had purchased for her son, minor-Plaintiff C.S., WHOLE FOODS vegan products from the Port Chester store. In doing so, Plaintiff, DEBBIE SPANO specifically relied upon the accuracy of the product labels, the accompanying signage, and WHOLE FOODS' placement of the cupcakes in an area made distinct from the non-vegan baked goods. Plaintiff, DEBBIE SPANO relied upon the vegan labels as proof that the goods in question did not contain the allergens to which C.S. was allergic. Minor-Plaintiff, C.S., did not experience allergic reactions to cupcakes and other WHOLE FOODS baked goods bearing the vegan label.

9. On or about September 7, 2018, WHOLE FOODS offered for sale vegan cupcakes placed in the vegan section of the bakery. Neither the cupcake labels, nor the signage in the vegan section of the bakery disclosed the inclusion of nuts, ingredients derived from nut products, or other ingredients to which C.S. was severely allergic in the cupcakes.

10. On or about September 7, 2018, vanilla cupcakes were purchased for specific consumption by minor Plaintiff, C.S. because they were labelled "vegan" and because the vegan label listed the ingredients, none of which were known to cause C.S. to experience an allergic reaction.

11. The vegan cupcakes were kept in their packaging until being transported to the Alamo Drafthouse Cinema on September 8, 2018, for consumption by minor Plaintiff, C.S. at his friend's birthday party.

12. The vegan cupcake was subsequently placed on a plate and in the control of Plaintiff, DEBBIE SPANO, to ensure there was no cross-contamination with other food available to the rest of the children at the birthday party.

13. Minor-Plaintiff, C.S. consumed part of a vegan cupcake purchased from WHOLE FOODS. Minor-Plaintiff, C.S., thereafter experienced the onset of anaphylaxis in front of his school age friends (hereinafter the "Incident"). DEBBIE SPANO administered epinephrine while awaiting the arrival of first responders for transport of Minor Plaintiff C.S. to the local emergency department. Minor Plaintiff C.S. was treated and released that evening.

14. Subsequent investigation revealed that the cupcakes were not vegan, but rather, were the non-vegan version of vanilla cupcakes manufactured, unlawfully labelled, and then sold by WHOLE FOODS. The WHOLE FOODS bakery manager later admitted that unknowledgeable staff had mis-labelled the non-vegan vanilla cupcakes as vegan.

15. After he recovered, Minor-Plaintiff, C.S., subsequently developed a severe and pervasive mistrust of all food, their corresponding labels and those who prepared his meals. Any food that minor-Plaintiff C.S. consumed had to be made where he could observe the preparation, the ingredients could only originate from specific "allergy-friendly" companies, and he would only make food choices based upon what he had safely consumed in the past. Eating in public became almost impossible due to his fear that he would go into anaphylactic shock and those around him would not know how to medically help him.

16. Because of these psychological challenges minor-Plaintiff, C.S. was facing, Plaintiff DEBBIE SPANO could no longer continue her career as a fashion sales executive in New York. C.S. would not eat food at restaurants. He would only eat food that he prepared himself, or which was prepared by his parents while he was watching. C.S. would not eat at school unless DEBBIE SPANO brought the pre-prepared lunch to him, and even then, was mistrustful in the public environment. C.S. was unable to successfully participate while at school and quickly fell behind his grade level due to his food related stress and anxieties. DEBBIE and JEFF SPANO were thus required to provide additional tutoring to C.S. to help C.S. catch-up in his education.

17. Plaintiffs DEBBIE SPANO and JEFF SPANO were further forced to modify their parenting of minor-Plaintiff, C.S. as he was no longer able to participate in normal family and social activities. He no longer allowed his parents to kiss him for fear of cross-contamination and refused to go to family and friends' events. C.S. was

neither invited to, nor wanted to attend, playdates with friends due to other parents' fears that he would experience a severe allergic reaction.  C.S. further isolated himself for fear of experiencing anaphylactic shock in front of his peers again, and for fear that supervising adults would not be able to provide the life-saving medication he would require.

18. Options for babysitters were slim due to minor-Plaintiff, C.S.'s severe anxiety over food preparation.  As such, Plaintiffs DEBBIE SPANO and JEFF SPANO's ability to engage in dates or vacations were almost completely eliminated.

19. Plaintiffs DEBBIE SPANO and JEFF SPANO were forced to dramatically change their lives to address minor-Plaintiff, C.S.'s newly found food anxiety and the related challenges it presented.

## III.
## CAUSES OF ACTION

### NEGLIGENCE

20. Plaintiffs incorporate by this reference all preceding paragraphs as if fully set forth herein.

21. Defendants, including each unknown and as yet unidentified tortfeasor (hereinafter collectively referred to as "Defendants") owed a duty to Plaintiffs to provide lawfully and accurately labeled food for sale.

22. Defendant breached this duty by failing to warn the consumers, including Plaintiff, that the prepackaged "vegan" cupcakes were in fact non-vegan cupcakes to which C.S. and many other customers were highly allergic.

23. Defendants further breached their duty by failing to identify ingredients lawfully and accurately in food goods directly violates 21 U.S.C. 321(qq).

24. Due to the gravity of potential harm by highly allergic customers ingesting allergens from unlawfully mis-labelled bakery products, Defendant WHOLE FOODS, Inc. owed SPANO the duty to maintain policies and procedures to ensure that only qualified, supervised and trained employees produce, handle, place and lawfully label the vegan products. Further, due to the particularized nature of vegan ingredients, Defendant owed a heightened duty to customers to ensure the use of proper ingredients to minimize handling mistakes, to train their employees properly in the shipping, unpacking, and baking of vegan goods, and to train WHOLE FOODS employees in ensuring that no cross-contamination occurred between vegan and non-vegan products produced by the Defendant.

25. Defendant breached their duty of care to SPANO by abandoning or ignoring such policies and procedures, by staffing the bakery department with untrained, unsupervised and unqualified employees who were unfamiliar with the importance of lawfully and accurately labeling foods containing allergens as set forth in 21 U.S.C. 321(qq). Defendant further breached their duty of care to SPANO by selling prepackaged vegan cupcakes without inspection for the proper ingredients, without audit of the labelling machine for proper programming and operation, without placing only vegan cupcakes in the vegan-labeled cupcake packaging, and by placing and displaying non-vegan cupcakes in the vegan section of the bakery.

26. Defendants knew or should have known that the breach of the duties, and failure to address the risk of severe harm, was unreasonable.

27. Defendants' breach of their respective duties was a substantial factor in causing C.S. to suffer personal and psychological injury, suffering anaphylactic shock, and development of a severe eating disorder. Defendants' breach of their respective duties was also a substantial factor in causing disruption or elimination of family relations and development, and the contemporaneous observation by DEBBIE SPANO of her minor child experiencing life-threatening anaphylaxis in public. Defendants' breach of their respective duties was a substantial factor in causing SPANO to incur economic damages in the form of medical expenses as well loss of employment capacity in DEBBIE SPANO in excess of $500,000, and all other damages according to proof but in excess of $75,000.

28. Upon information and belief, Defendants had knowledge of no less than Thirty-Six (36) reports occurring within either nationwide or regional WHOLE FOODS stores involving undisclosed ingredients within foods prepared within the stores; Defendants had knowledge of additional complaints and incidents from the U.S. Food and Drug Administration (hereafter the "FDA") in response to such violations of 403(w) of the Act [21 U.S.C. § 343(w)] in that the finished product labels failed to declare all major food allergens present in the products, as required by section 403(w)(1) of the Federal Food, Drug, and Cosmetic Act (the Act) [21 U.S.C. §343(w)].; Defendants had knowledge of the mislabeling of food products to

exclude particular allergens with sufficient notice to create alternative packaging or protocols to eliminate the risk of allergic reactions prior to the present incident.

29.  With the knowledge of prior incidents occurring nationwide regarding unlawful labeling of ingredients on store-made bakery products to the level of FDA intervention, Defendant WHOLE FOODS acted or failed to act by failing to research, analyze and deploy a reasonably safe alternative solution. Defendant's acts or failures to act were an extreme departure from the ordinary standard of conduct such that their conduct arose to the level of gross negligence.

30. Further, or alternatively, the conduct alleged above by Defendants WHOLE FOODS constituted despicable conduct carried on by the Defendants in conscious disregard of the rights and safety of the Plaintiffs.  Accordingly, Plaintiffs and the State of Texas are entitled to an objectively reasonable award of exemplary damages against WHOLE FOODS to incentivize deployment of a safe solution, and to disincentivize further despicable conduct by making severe allergic reaction claims unaffordable as a cost of doing business.

## STRICT PRODUCT LIABILITY

31. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

32. At the time of the Incident in question, Defendant WHOLE FOODS, Inc. was in the business of manufacturing, processing, distributing, labeling and selling the above-mentioned vegan cupcakes.  WHOLE FOODS also undertook the responsibility to configure and maintain its labeling equipment.

33. On or about September 7, 2018, WHOLE FOODS unlawfully placed misbranded and mislabeled cupcakes in the stream of commerce with the knowledge that consumers would not, and could not, inspect the product for harmful defects.

## MANUFACTURING DEFECT

34. The WHOLE FOODS cupcakes were defective as the composition and labeling deviated from planned specifications. Defendant WHOLE FOODS unlawfully and inaccurately labeled the cupcakes as "vegan" even though the cupcakes were not vegan. Further the purportedly vegan cupcakes contained allergen ingredients which were required by Federal law to be disclosed on the label but were not disclosed on the label.

35. The WHOLE FOODS cupcakes reached C.S. without a substantial change in condition.

36. The manufacturing defect rendered the cupcakes unreasonably dangerous to consume by the very customers WHOLE FOODS intended to purchase the product, and whom WHOLE FOODS knew would be physically harmed by the product if it were defective as set forth above.

37. The manufacturing defect was a substantial factor in causing, was the actual cause of, or the proximate cause of injury to SPANO such that general and special damages were sustained by SPANO as a result.

## MARKETING DEFECT

38. The WHOLE FOODS cupcakes were defective in that Defendant WHOLE FOODS failed to warn SPANO of the harmful ingredients in the product. WHOLE FOODS unlawfully and inaccurately labeled the cupcakes as "vegan" even though the cupcakes were not vegan. Further the purportedly vegan cupcakes contained allergen ingredients which were required by Federal law to be disclosed on the label but were not disclosed on the label.

39. The WHOLE FOODS cupcakes reached C.S. without a substantial change in condition.

40. The marketing defect rendered the cupcakes unreasonably dangerous to consume by the very customers WHOLE FOODS intended to purchase the product, and whom WHOLE FOODS knew would be physically harmed by the product if it were defectively mislabeled as set forth above.

41. The marketing defect was a substantial factor in causing, was the actual cause of, or the proximate cause of injury to SPANO such that general and special damages were sustained by SPANO as a result.

## BREACH OF EXPRESS WARRANTY

42. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

43. Defendant WHOLE FOODS, Inc expressly warranted that the "vegan" vanilla cupcake consumed by minor-Plaintiff, C.S., was free from dairy, tree nuts, and fish. Pursuant to § 2-313 of the New York Uniform Commercial Code a seller's

warranty whether express or implied extends to any natural person if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. Accordingly, no privity requirement exists to state a claim for express warranty under New York law.

44. Pursuant to § 2-313 of the New York Uniform Commercial Code, the WHOLE FOODS cupcake label constituted a material statement amounting to a warranty to the purchaser and subsequent consumers, including SPANO, of the subject cupcakes concerning not only the non-allergen ingredients the cupcakes contained, but also, the ingredients and allergens that the cupcakes did not contain. Through the label affixed in the WHOLE FOODS bakery, WHOLE FOODS expressly warranted that the "vegan" cupcake was free from dairy, tree nuts, fish and/or ingredients derived from those substances. This warranty was affirmed by WHOLE FOODS in that the bakery department placed and displayed the purportedly vegan cupcakes on a vegan display table which was located separately from the non-vegan items.

45. The cupcakes were purchased by a knowledgeable adult who herself was subject to severe food allergies, and who had come to rely over the years on WHOLE FOODS vegan products by locating them at the vegan display table, purchasing them and then using them without adverse reaction. The purchaser visited WHOLE FOODS on September 7, 2018 and selected the vegan cupcakes package from the vegan display table specifically to purchase non-allergenic cupcakes to

provide the following day to C.S. at their child's birthday party. The purchaser and subsequent consumers, including SPANO, accordingly relied on this warranty as a basis for the contract of purchase with WHOLE FOODS.

46. WHOLE FOODS breached its express warranty to the purchaser and subsequent consumers of the cupcakes, including SPANO, by mislabeling allergenic and non-vegan cupcakes with a vegan ingredient label which expressly and unlawfully excluded allergens to which C.S. was so allergic that consumption would result in immediate and life-threatening anaphylactic shock.

47. The breach of warranty by WHOLE FOODS rendered the cupcakes defective.

48. The purchaser and subsequent consumers of the product were harmed by the breach of express warranty by WHOLE FOODS as set forth herein.

<b>BREACH OF IMPLIED WARRANTY</b>

49. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

50. Defendant WHOLE FOODS baked cupcakes, vegan or otherwise, and sold them individually or in single packages containing four or more decorated or iced cupcakes.  In selling multiple cupcakes in a single package, WHOLE FOODS knew or had reason to know that persons other than the purchaser would be the end consumers of the cupcakes and they would likely be consuming the cupcakes at gatherings.

51. Pursuant to § 2-313 of the New York Uniform Commercial Code a seller's warranty whether express or implied extends to any natural person if it is

reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty.  Accordingly, no privity requirement exists to state a claim for express warranty under New York law.

52. The cupcakes were purchased by a knowledgeable adult who herself was subject to severe food allergies, and who had come to rely over the years on WHOLE FOODS vegan products by locating them at the vegan display table, purchasing them and then using them without adverse reaction.  The purchaser visited WHOLE FOODS on September 7, 2018 and selected the vegan cupcakes package from the vegan display table specifically to purchase non-allergenic cupcakes to provide the following day to C.S. at their child's birthday party.

53. Because Defendant WHOLE FOODS, Inc expressly warranted that the "vegan" vanilla cupcake consumed by minor-Plaintiff, C.S., was free from dairy, tree nuts, and fish, WHOLE FOODS impliedly warranted that the cupcake was fit for its intended purpose and foreseeable use (consumption without inspection by consumers allergic to the excluded ingredients without allergic reaction). The purchaser and subsequent consumers, including SPANO, accordingly relied on these implied warranties of fitness.

54. WHOLE FOODS breached its implied warranties to the purchaser and subsequent consumers of the cupcakes, including SPANO, by mislabeling allergenic and non-vegan cupcakes with a vegan ingredient label which expressly

and unlawfully excluded allergens to which C.S. was so allergic that consumption would result in immediate and life-threatening anaphylactic shock.

55. The breach of warranties by WHOLE FOODS rendered the cupcakes defective.

56. The purchaser and subsequent consumers, including SPANO were harmed by the breach of implied warranties by WHOLE FOODS as set forth herein.

## LOSS OF CONSORTIUM

57. Plaintiffs incorporate by this reference all preceding paragraphs as if fully set forth herein.

58. Plaintiffs DEBBIE SPANO and JEFF SPANO were at all times the legal parents of minor-Plaintiff, C.S.

59. Plaintiff DEBBIE SPANO was present with minor-Plaintiff, C.S. when he entered life-threatening anaphylactic shock on the date of the Incident.

60. Plaintiff DEBBIE SPANO observed minor-Plaintiff, C.S. run from the birthday party to the bathroom after taking one bite of the cupcake in a terrified attempt to keep his friends from seeing his body shut down from the severity of the allergic reaction.

61. Plaintiff DEBBIE SPANO became minor-Plaintiff, C.S.'s full-time caretaker after the Incident.  Plaintiff DEBBIE SPANO was forced to resign from her position as executive of Vera Bradley to provide minor-Plaintiff, C.S, the care he required. Such care included almost exclusive cooking of foods minor-Plaintiff, C.S. would eat and tireless advocacy to ensure that he remained successful in his education

in spite of his debilitating anxiety over social events and eating any food outside the home.

62. Plaintiff JEFF SPANO was further forced to take over the primary position of financially providing for Plaintiff DEBBIE SPANO and minor-Plaintiff, C.S. to assist Plaintiff DEBBIE SPANO as she cared full time for minor-Plaintiff, C.S.

63. Plaintiffs JEFF SPANO and DEBBIE SPANO could no longer leave minor-Plaintiff, C.S. for extended periods and were deprived the enjoyment and comfort of engaging in social events with each other as well as with minor-Plaintiff, C.S.

64. Plaintiffs JEFF SPANO and DEBBIE SPANO were further denied meaningful relationships with minor-Plaintiff, C.S. as after the Incident, he refused physical touch, such as kissing, and other contact.

65. Plaintiffs JEFF SPANO and DEBBIE SPANO suffered as a result of the Incident.

## VICARIOUS LIABILITY

66. Plaintiffs incorporate by this reference all preceding paragraphs as if fully set forth herein.

67. Plaintiffs were harmed by the mislabeling of cupcakes by the employees within the bakery department at WHOLE FOODS, who were acting within the course and scope of their employment as WHOLE FOODS employees at the time of making and labeling the vanilla cupcake sold as "vegan." Either the WHOLE FOODS MARKET employees did not make the vegan vanilla cupcakes with the correct ingredients, or improperly labelled a non-vegan cupcake as vegan prior to minor-Plaintiff C.S.,'s consumption of the same.

68. Each of Defendant's employees committing the acts described above were acting in the course and scope of their employment with the Defendant, and pursuant to the supervision and direction of the Defendant such that the Defendant is vicariously liable for the acts of the employees, as if the Defendant had committed the acts itself.

## DECEPTIVE ACTS AND PRACTICES
### N.Y. GEN LAW 349 ET. SEQ., 350, 350-A, 350-E,

69. Plaintiffs incorporate by this reference all preceding paragraphs as if fully set forth herein.

70. Plaintiffs were persons injured by the deceptive and false advertising and labelling practices of the Defendant, as set forth in detail above.  Plaintiffs suffered actual (economic and non-economic) damages proximately caused by Defendants' deceptive and unlawful conduct in the form of medical expenses, lost income, lost earning capacity and actual damages in the form of lasting emotional distress and derangement.

71. Defendant's violation of the above-referenced statutes justifies the award of reasonable attorney's fees to the Plaintiffs.

72. Defendant's violation of the above-referenced statutes was knowing and willful, further justifying the imposition of treble damages, past and future actual damages and exemplary damages.

## DECEPTIVE TRADE PRACTICES
### Texas Business and Commerce Code Sec. 17.50 ET. SEQ.

73. Plaintiffs incorporate by this reference all preceding paragraphs as if fully set forth herein.

74. Defendant's above-described acts in falsely labeling foods as vegan and failing to include the allergens on the label constituted a deceptive trade practice pursuant to Texas Business and Commerce Code Sec. 17.50 ET. SEQ., and more particularly Sec. 17.46 (b)5, and (b)7.

75. Plaintiffs were persons injured by the deceptive and false advertising and labelling practices of the Defendant, as set forth in detail above.  Plaintiffs suffered actual (economic and non-economic) damages proximately caused by Defendants' deceptive and unlawful conduct in the form of medical expenses, lost income, lost earning capacity and actual damages in the form of lasting emotional distress and derangement.

76. Defendant's violation of the above-referenced statutes justifies the award of reasonable attorney's fees to the Plaintiffs.

77. Defendant's violation of the above-referenced statutes was knowing and willful, further justifying the imposition of treble damages, past and future actual damages and exemplary damages.

78. Pursuant to Texas Business and Commerce Code Sec. 17.50 (h),  Notwithstanding any other provision of this subchapter, if a claimant is granted the right to bring a cause of action under this subchapter by another law, the claimant is not limited to recovery of economic damages only but may recover any actual damages

incurred by the claimant, without regard to whether the conduct of the defendant was committed intentionally.

## IV.

## PRAYER

1. WHEREFORE, Plaintiffs pray for damages to be awarded as follows:

    a. Past and Future General damages according to proof;

    b. Past and Future Economic damages according to proof;

    c. Reasonable attorneys' fees per N.Y. GEN LAW 349 ET. SEQ. and Texas Business and Commerce Code Sec. 17.50(d).

    d. Treble Damages per N.Y. GEN LAW 349 ET. SEQ. and Texas Business and Commerce Code Sec. 17.50.

    e. Exemplary or Punitive Damages.

## DEMAND FOR TRIAL BY JURY

Plaintiffs JEFF SPANO, DEBBIE SPANO and minor-Plaintiff C.S. hereby demand trial by jury.

Dated: August 26, 2021                Respectfully submitted,

                                      **EGGLESTON KING, LLP**

                                          */s/ David Rapp*
                                      By _____
                                      **DAVID RAPP**
                                      State Bar No. 24027764
                                      102 Houston Avenue, Suite 300
                                      Weatherford, TX 76086
                                      817-596-4200
                                      david@ektexas.com

                                      Attorneys for Plaintiffs
                                      JEFF & DEBBIE SPANO, C.S., A MINOR
                                      CHILD


# CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of August, 2021, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court.


                                          */s/ David Rapp*
                                      _____

                                          David Rapp