UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JEFF SPANO, DEBBIE SPANO and | § | |
| C.S., a minor child, | § | |
| *Plaintiffs,* | § | |
| | § | Case No. 1:21-CV-00748-DAE |
| v. | § | |
| | § | |
| WHOLE FOODS, INC. and DOES 1-50 | § | |
| *Defendants.* | § | |

## DEFENDANT'S MOTION TO DISMISS FOR
## FAILURE TO STATE A CLAIM

1. COMES NOW Defendant Whole Foods Market Group, Inc., misnamed as Whole Foods, Inc. ("Defendant") in the above-styled and numbered cause and, pursuant to Fed. R. Civ. P. 12(b)(6) files their Motion to Dismiss for Failure to State a Claim in response to Plaintiffs' Original Complaint.  In support thereof, Defendant would show the following.

## I.     INTRODUCTION

2.  This is an action to recover for personal injuries allegedly suffered by Plaintiff, C.S., a minor child, as a result of consuming a cupcake allegedly purchased from Defendant, Whole Foods Market Group, Inc. ("WFM")[1] that allegedly failed to disclose certain allergens.  Plaintiffs allege that C.S. consumed the cupcake at a friend's birthday party, went into anaphylactic shock, and subsequently developed an eating disorder.  Plaintiffs further allege that Debbie Spano was forced to quit her job to take care of C.S. as a result of his eating disorder, and seek to recover Ms. Spano's lost income and lost earning capacity as damages.

---

[1] The Plaintiffs incorrectly named "Whole Foods, Inc." as the defendant.  Because the Plaintiffs' allegations arise out of a claimed purchase at a Whole Foods Market branded store in Port Chester, New York, the correct corporate entity is Whole Foods Market Group, Inc. ("WFMG") as WFMG owns and operates the stores in the state of New York.

1

3.   This motion asks the Court to do five things.  First, the Court should find that Plaintiffs' claims, which are derived from and based on the Federal Food, Drug and Cosmetic Act ("FDCA") are preempted and should be dismissed because there is no private cause of action under the FDCA.

4.   Second, the Court should find that, to the extent that any claims by Jeff and Debbie Spano survive preemption, they are governed by Texas law and are barred by the applicable two-year statute of limitations.

5.   Third, because Texas law applies to Plaintiffs' claims, the Court should dismiss claims brought under New York law.

6.   Fourth, the Court should dismiss Plaintiffs' causes of action for "loss of consortium" and "vicarious liability" because these are not independent causes of action, and, furthermore, a parent cannot recover for "loss of consortium" for injuries to a child under either New York or Texas law.

7.   Fifth, the Court should hold that Plaintiffs cannot recover for Debbie Spano's lost income or earning capacity based on injuries to C.S., as these types of damages are only recoverable where the person asserting lost income or earning capacity is also the same person who was injured.

## II.    FACTUAL BACKGROUND

8.   Plaintiffs allege WFM manufactured, packaged, and sold a cupcake that was labelled as vegan and allegedly contained nuts that were not identified on the label.    Complaint, ¶¶ 6, 8, 9, 14.  Plaintiffs further allege that after purchasing the product at a WFM location in New York on or around September 7, 2018, Plaintiff Debbie Spano gave the cupcake to Minor Plaintiff C.S. while he was at a friend's birthday party on September 8, 2018; C.S. went into anaphylactic shock, and subsequently developed an eating disorder in which he would only eat food prepared in front

of him, only trusted ingredients from "specific 'allergy-friendly' companies," and was afraid to eat in public, for fear of going into anaphylactic shock in front of others. *Id.* ¶¶ 10-13, 15, 27. Plaintiffs further allege that the eating disorder negatively affected Minor Plaintiff C.S.'s ability to socialize with his peers, and caused him to fall behind in school. *Id.* ¶¶ 16-17.

9.  Plaintiffs also allege that, as a result of Minor Plaintiff C.S.'s mistrust of food not prepared by himself or his parents, they were unable to obtain childcare services for C.S. *Id.* ¶¶ 18-19.  Plaintiffs allege that Plaintiff Debbie Spano was forced to resign from her job in order to provide Minor Plaintiff C.S. the care he required. *Id.* ¶ 61.

10.  Plaintiffs have alleged the following causes of action: (1) Negligence, (2) Strict Products Liability Manufacturing Defect, (3) Strict Products Liability Marketing Defect (Failure to Warn), (4) Breach of Express Warranty Under New York Commercial Code, (5) Breach of Implied Warranty Under New York Commercial Code, (5) "Loss of Consortium," (6) "Vicarious Liability," (7) Violations of New York's Deceptive Trade Practices laws, New York Gen Law § 349 *et seq.*, 350, 350-A, and 350-E, and (8) Violations of Texas's Deceptive Trade Practices Act, Texas Business and Commerce Code Sec. 17.50 *et seq*. *Id.* ¶¶ 20-78.

11.  Plaintiffs seek the following categories of damages: (1) medical expenses, (2) lost income (of Debbie Spano), (3) lost earning capacity (of Debbie Spano), (4) "emotional distress and derangement," (4) exemplary damages under New York's and Texas's Deceptive Trade Practices statutes and the common law. *Id.* ¶ 30, 70, 72, 75, 77.

### III.    ARGUMENT

### A.    Plaintiffs Have No Cause of Action for Violations of the Federal Food, Drug, and Cosmetic Act

3

12. Plaintiff's Complaint is riddled with citations to and discussion of various sections of the Federal Food, Drug, and Cosmetic Act ("FDCA"), specifically claiming a "violation" of Sections 21 U.S.C. § 321(qq) (which defines a "major food allergen") and § 343(w) (which specifies the labeling requirement for foods containing "major food allergens").  *See* Compl. ¶¶ 23, 25, 28.

13. Private parties, however, cannot enforce the FDCA.  "[A]ll such proceedings for the enforcement, or to restrain violations, of this Act … shall be by and in the name of the United States." 21 U.S.C. § 337(a); *Timberlake v. Synthes Spine, Inc.,* 2011 U.S. Dist. LEXIS 17034, *27 (S.D. Tex. Feb. 8, 2011) ("there is no private right of action under the FDCA") (citing *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 121 (2001)); *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997) (there can be no private cause of action if plaintiff's "true goal is to privately enforce alleged violations of the FDCA"); *Verzani v. Costco Wholesale Corp.,* No. 09-cv-2117-CM, 2010 WL 3911499, at *3 (S.D.N.Y. Sept. 28, 2010) ("The FDCA lacks a private right of action and therefore [a plaintiff] cannot rely on it for purposes of asserting a state-law consumer claim under G.B.L. § 349"), aff'd, 432 Fed. Appx. 29 (2d Cir. 2011).

14. Plaintiffs are not only precluded from directly enforcing the FDCA, they are also prevented from indirectly enforcing the FDCA by way of state law claims that are wholly dependent on alleged FDCA violations.  "Where a state law claim would not exist but for a FDCA regulation, [21 U.S.C.] § 337(a) impliedly preempts the claim."  *Patane v. Nestle Waters North America, Inc.*, 314 F. Supp. 3d 375, 387 (D. Conn. 2018) (dismissing state-law deceptive practices claims where "[e]ach and every one of Plaintiffs' claims are wholly FDCA-dependent"); *see also Estes v. Lanx, Inc.,* 660 Fed. Appx. 260, 262 (5th Cir. 2016) (finding that claim for fraudulent concealment was based on violations of FDCA and was thus impliedly preempted under *Buckman,* 531 U.S. 341; *Solak v. Hain Celestial Grp., Inc.*, No. 17-cv-0704-LEK-DEP, 2018 WL 1870474, at *9 (N.D.N.Y. Apr. 17, 2018) ("the Complaint could be read as attempting to use Defendant's alleged FDCA violation as a separate basis for supporting Plaintiffs' claims under both New

York's and California's consumer protection statutes.  To the extent that it does so, the Complaint counteracts the express language of the FDCA, which 'leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance' with its enumerated provision."), *quoting Buckman,* 531 U.S. 341 at n.4 (2001).

15. In the present case, Plaintiffs specifically base all of their causes of actions on an alleged breach of the FDCA.  Plaintiffs' expressly state that Defendant was negligent by failing to accurately identify ingredients in violation of 21 U.S.C. 321(qq).  (Complaint p. 7 at ¶¶23, 25.) Plaintiffs underscore their reliance on the FDCA as the basis for all of their claims by citing to an FDA letter alleging violations of the FDCA.[2]  (Complaint p. 8 at ¶ 28-29.) Each of Plaintiffs' subsequent causes of action derive from the alleged mislabeling, which Plaintiffs assert violated the FDCA.  (Complaint at p. 10 ¶33 (Strict Liability), ¶34 (Manufacturing Defect), p. 11 ¶38 (Marketing Defect), p. 11 ¶42 (Breach of Express Warranty), p. 13 ¶49 (Breach of Implied Warranty), P. 15 ¶ 57 (Loss of Consortium), p. 16 ¶ 66 (Vicarious Liability), p. 17 ¶ 69 (N.Y. Deceptive Acts and Practices), and p. 18 ¶ 73 (Texas Deceptive Trade Practices).

16. Because all of Plaintiffs' causes of action are based on alleged violations of the FDCA, which precludes private causes of action, they are preempted and should be dismissed.

**B.      Plaintiffs Jeff And Debbie Spano's Claims Are Barred by The Statute of Limitations**

In the event this Court finds that any of Jeff and Debbie Spano's causes of action survive federal preemption, this Court must apply Texas statutes of limitations to their claims.  "It is axiomatic that, when administering non-federal claims, federal courts apply federal procedural law and state substantive law." *Mondrian Global Equity Fund, L.P. v. BP P.L.C. (In re BP p.l.c.)*, 51 F. Supp. 3d 693, 697-698 (S.D. Tex. 2014).  Furthermore, "[f]ederal courts view statutes of

---

[2] Plaintiffs failed to point out that the FDA letter in question was dated December 16, 2020, over two years after the incident alleged in their complaint.

limitations as substantive law. Therefore, pursuant to *Erie*, the Court looks to the law of forum to choose which statute of limitations applies." *Id.* (citations omitted).

17. "Texas courts, unlike federal courts, view statutes of limitations as procedural in nature. Thus, Texas courts do not undertake a 'choice of law' analysis when it comes to statutes of limitations; they simply enforce Texas's own limitations periods." *Id*. (citations omitted).

18. Here, the applicable statute of limitations is Texas Civil Practices and Remedies Code § 16.003, which provides that "a person must bring suit for . . .personal injury. . .not later than two years after the day the cause of action accrues. Tex. Civ. Prac. & Rem. Code § 16.003. In a cause of action based on personal injuries, the claim accrues at the time of injury.[3] *Ibrahim v. Dixon*, NO. 01-09-01026-CV, 2011 Tex. App. LEXIS 971 (Tex. Ct. App. Feb. 10, 2011). Furthermore, Section 16.003 generally applies to all tortious causes of action that arise out of a personal injury, including the causes of action asserted by Plaintiffs Debbie and Jeff Spano. *See, e.g.*, *Daneshjou Co. v. Goergen*, No. 03-04-00730-CV, No. 03-04-00734-CV, No. 03-04-00735-CV, No. 03-04-00737-CV, No. 03-04-00738-CV, No. 03-04-00739-CV, No. 03-04-00740-CV, 2008 Tex. App. LEXIS 6036 (Tex. Ct. App. Aug. 8, 2008) (Section 16.003's two-year limitations period applies to negligence claims and claims under Texas's Deceptive Trade Practices Act); *Porter v. Charter Medical Corp.*, 957 F. Supp. 1427, 1433 (5th Cir. 1997) ("a cause of action for loss of consortium is governed by § 16.003"); *Ogbolu v. Colgate-Palmolive Co.*, No. 05-06-01480-CV, 2008 Tex. App. LEXIS 410, *3 (Tex. Ct. App. Jan. 22, 2008) (Section 16.003's two-year limitations period applies to products liability causes of action).

19. Plaintiffs allege that they purchased the allegedly defective cupcake on or around September 7, 2018, and that Minor Plaintiff C.S. consumed the cupcake on September 8, 2018.

---

[3] Defendant acknowledges that Minor Plaintiff C.S.'s claims do not accrue until he reaches the age of eighteen, pursuant to Tex. Civ. Prac. & Rem. Code § 16.001

Compl ¶¶ 10-11.  Plaintiffs did not file their Complaint until August 26, 2021, almost three years after the date that Minor Plaintiff C.S. allegedly consumed the cupcake and had an adverse reaction.  *See generally*, Plaintiffs' Complaint.  Accordingly, Plaintiffs Jeff and Debbie Spano's causes of action should be dismissed, because they are all based on a claim of personal injury, and are subject to the two-year limitations period found in Tex. Civ. Prac. & Rem. Code § 16.003.

C.     **Texas Law Applies to the Remaining Causes of Action to the Extent this Court Finds they Survive Federal Preemption**

20. Because all of Plaintiffs' claims are based on the FDCA they are preempted and should be dismissed.  However, in the event the Court finds that any claims survive federal preemption, the Court should apply Texas law to those remaining claims.

21. Plaintiffs' Complaint alleges causes of action under both New York and Texas laws. Plaintiff cites to New York law for her causes of action for breach of warranty, deceptive trade practices, and false advertising, while also citing Texas law for parallel causes of action under Texas's Deceptive Trade Practice Act, Tex. Bus. & Com. Code § 17.12, *et seq.*  The Complaint is vague as to the state under which Plaintiffs assert their causes of action for negligence, strict product liability, manufacturing defect, marketing defect, and breach of warranty, however, Texas law should apply to these as well in the event they survive preemption.

22. "A federal court sitting in diversity follows the choice of law rules of the state in which it sits." *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 258 (5th Cir. 2014). This Court should apply Texas choice-of-law rules.  "Texas applies the 'most significant relationship' test as set forth in sections 6 and 145 of the Restatement (Second) of Conflict of Laws (2010) ("Restatement")."  *E.H. Nat'l Bank v. Tran*, Civil Action No. 3:16-cv-00083-M, 2016 U.S. Dist. LEXIS 102301 at *8 (N.D. Tex., Aug. 4, 2016) (citing *Hughes Wood Prods., Inc. v. Wagner*,

18 S.W.3d 202, 205 (Tex. 2000); *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 709 F.3d 515, 523-24 (5th Cir. 2013)).   Under this test, a court must consider which state's law has the most significant relationship to the particular substantive issue to be resolved.  *Id.* at *9 (citing *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1413 (5th Cir. 1995)).

> Section 6(2) of the Restatement requires a court, in the absence of a statutory directive of its own state on choice of law, to consider the following general factors relevant to choice of law:
>
> > (a) the needs of the interstate and international systems,
> >
> > (b) the relevant policies of the forum,
> >
> > (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> >
> > (d) the protection of justified expectations,
> >
> > (e) the basic policies underlying the particular field of law,
> >
> > (f) certainty, predictability and uniformity of result, and
> >
> > (g) ease in the determination and application of the law to be applied.
>
> Restatement § 6(2). Selection of the applicable law depends on the qualitative nature of the particular contacts, rather than the number of contacts with a particular state. Duncan, 665 S.W.2d at 421.

*Id.* at *9-10 (citations and quotation marks omitted).

23. In applying Section 6, courts next consider the factors listed in Section 145(2), which are:

> (a) the place where the injury occurred;
>
> (b) the place where conduct causing the injury occurred;
>
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
>
> (d) the place where the relationship, if any, of the parties is centered.
>
> Restatement § 145. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Id.* at *9-10 (citations and quotation marks omitted).

24. Under these factors, there can be only one state that has "the most significant relationship to the particular substantive issue[s] to be resolved."  There is no basis to assert that New York law should apply to some claims and Texas law to others; one state's laws should govern all claims in this action because the relationship of the states to the "substantive issue[s] to be resolved" is the same for all of the substantive issues in this case.

25. Furthermore, the Court should find that Texas has the most significant relationship to the particular substantive issues to be resolved.  While none of the Section 6(2) of the Restatement factors (a)-(g) weigh especially for or against the application of Texas or New York law, the factors considered in Section 145(2), above, support the application of Texas law.  First, WFM has its principal place of business in Texas.  *See* Compl. ¶ 1.  Second, the "relationship of the parties" is now "centered" here, because plaintiff elected to bring suit in Texas rather than New York.  Finally, the one factor that supports the application of New York law –the place where the injury occurred – should carry little weight, because the incident did not happen in a Whole Foods store, but rather, at a location where Plaintiffs took the allegedly contaminated product.  Plaintiffs could have travelled to any other state with the product in question and consumed it there, but that would not support the application of that state's laws to Plaintiffs' claims.  The "place where the injury occurred" in this case is merely incidental to wherever the Plaintiffs happen to take the product in question; the fact that it happened to be consumed in New York does not support the application of New York law when the other relevant factors all support the application of Texas law.

D.    **Plaintiffs' Products Claims—Regardless of How They Are Styled—Fall Under The Texas Products Liability Act.**

26. Because Texas law applies to any of Plaintiffs' claims that survive preemption, the negligence, strict product liability, manufacturing defect, marketing defect, and breach of warranty claims are all covered by the Texas Products Liability Act ("TPLA").

27. The TPLA defines a "products liability action" as any claim against a manufacturer or seller for recovery of damages for personal injury, death or property damage from an allegedly defective product whether based on strict liability, negligence, misrepresentation, breach of warranty or any combination of those theories.  Tex. Civ. Prac. & Rem. Code §82.001 (2).  The determination of whether a plaintiff has asserted a claim under the TPLA is determined from the complaint.  *Petroleum Solutions v. Head,* 454 S.W.3d 482, 492 (Tex. 2014).

28. In the present case, Plaintiffs assert negligence, strict product liability, manufacturing defect, marketing defect, and breach of warranty claims.  As stated above, each of these causes of action are based on the FDCA and should be preempted, however, should any of them survive the Court should find that the TPLA applies.  The application of the TPLA to those claims is relevant because it is unclear from Plaintiffs' complaint exactly what product they purchased and, although Plaintiffs alleged WFM manufactured the product in question, WFM may have defenses under the TPLA as a non-manufacturing seller defendant.

### E.      Plaintiffs' Causes of Action Under New York Law Should Be Dismissed

29. Because Texas law should apply to this matter, Plaintiffs' causes of action for breach of express and implied warranty under the New York Uniform Commercial Code (Complaint, ¶¶ 42-56) should be dismissed.  Plaintiffs are free to file parallel causes of action under the Texas Uniform Commercial Code.

30. Likewise, Plaintiffs' cause of action for "Deceptive Acts and Practices" under N.Y. Gen Law §§ 349 et seq., 350, 350-A, and 350-E (Complaint ¶¶ 69-72) should be dismissed.

Plaintiffs have already pleaded parallel causes of action under Texas law (*see* Complaint, ¶¶ 73-78).

**F.    Plaintiffs' Causes of Action for "Loss of Consortium" Under Both New York and Texas Law Should Be Dismissed**

31. First and foremost, "loss of consortium" is a category of damages that is sometimes recoverable for certain torts; it is not a cause of action in and of itself.  *Whittlesey v. Miller*, 572 S.W.2d 665, 666 (Tex. 1978).[4]  A party "must first establish liability on an underlying tort claim to recover loss of consortium damages."  *Lemus v. Cookscreek 255, LLC*, No. 05-17-01085-CV, 2018 Tex. App. LEXIS 9836, *13, 2018 WL 6259480 (Tex. Ct. App. Nov. 30, 2018).  On that basis alone, the Court should dismiss this purported cause of action.

32. Regardless, a parent cannot recover for loss of consortium based on injuries to a child, under either New York or Texas law.  *Roberts v. Williamson*, 111 S.W.3d 113, 120 (Tex. 2003) ("We conclude that no compelling social policy impels us to recognize a parent's right to damages for the loss of filial consortium/"); *George v. Windham*, 169 A.D.3d 876, 877-878 (N.Y. App. Div. 2019) ("[I]n New York, the law will not compensate a parent for the loss of a child's affection and companionship when a child is injured.") (quoting *DeAngelis v Lutheran Med. Ctr.*, 84 AD2d 17, 26 (N.Y. 1981)).

33. Furthermore, there is no basis in law for Jeff and Debbie Spano to recover for the loss of the "enjoyment and comfort of engaging in social events with each other" (Complaint ¶ 63) because of their reduced availability due to taking care of Plaintiff C.S.  A spouse can only recover for loss of consortium of another spouse based on physical injuries *to the other spouse* him- or

---

[4] "The phrase 'loss of consortium' is more accurately described as an element of damage rather than a cause of action. But courts have so frequently used the phrase to denote those actions in which loss of consortium is the major element of damage that 'loss of consortium' has come to be referred to as a cause of action."

herself. *Whittlesey v. Miller*, *supra*, 572 S.W.2d at 668 ("either spouse has a cause of action for loss of consortium that might arise as a result of *an injury caused to the other spouse* by a third-party tortfeasor's negligence") (emphasis added).

> **G.    Plaintiffs' Cause of Action for "Vicarious Liability" Should Be Dismissed**

34. Vicarious liability is a theory of liability for holding principals, such as employers, responsible for the actions of their agents, e.g., their employees.  It is not a separate cause of action, but rather a legal principle that allows Plaintiffs to hold WFM liable for any alleged tortious conduct of its employees.  *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019) (noting that while courts have occasionally characterized vicarious liability as a cause of action, "[n]one would take this usage to mean vicarious liability is an independent cause of action," because it requires that there be an underlying independent tort); *Rivera v State of New York*, 34 N.Y.3d 383, 389 (2019) ("Under the common-law doctrine of respondeat superior, an employer—including the State—may be held vicariously liable for torts, including intentional torts, committed by employees acting within the scope of their employment.")

35. The Court should dismiss this "cause of action."  To the extent vicarious liability is relevant to the claims or defenses in this case, it is simply an element that is relevant to holding WFM liable for Plaintiffs' other alleged causes of action, based on the alleged actions of WFM employees.  It is not an independent cause of action.

> **H.    Plaintiffs Cannot Recover for Lost Income or Lost Earning Capacity**

36. As part of their damages claim for WFM's alleged violations of New York's and Texas' Deceptive Trade Practices Act, Plaintiffs make a claim for damages based on "lost income" and "lost earning capacity."  Complaint ¶¶ 70, 75.  Neither form of damages is recoverable, because the individual whose income and/or earning capacity was allegedly lost –

Debbie Spano – is not the same individual who claims to have suffered a physical injury – Plaintiff C.S., a minor child.

37. "[T]o recover for loss of earning capacity, a plaintiff must show that he has a physical impairment that affects his ability to earn a living." *Cox v. Centerpoint Energy, Inc.*, 2007 Tex. App. LEXIS 3769, *21, 2007 WL 1437519 (Tex. Ct. App. May 17, 2007); *Metropolitan Life Ins. Co. v. Haney*, 987 S.W.2d 236, 245 (Tex. Ct. App. 1999) (collecting cases re same). *Perez v Live Nation Worldwide, Inc.*, 2020 N.Y. Misc. LEXIS 3549, *33, 2020 NY Slip Op 32419(U), 21 (Sup. Ct. 2020) ("a person tortiously injured is entitled to recover for impairment of future earning capacity") (quoting *Grayson v Irvmar*, 7 AD2d 436, 439 (N.Y. 1959)).  Lost income likewise requires that there be an injury to the person whose income was lost. *Border Apparel-East v. Guadian*, 868 S.W.2d 894, 897 (Tex. Ct. App. 1993)

38. To Defendant's knowledge, there is no known legal authority under New York or Texas law that entitles Plaintiffs to recover for Debbie Spano's lost earning capacity or lost income based on an injury to Plaintiff C.S., a minor child.

## IV.    CONCLUSION AND PRAYER

40.  Defendant prays the Court to grant the foregoing Motion to Dismiss as to all causes of action brought by all Plaintiffs, on the grounds that their claims are derived from and based on violations of the Federal impliedly preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA").

41. Defendant prays the Court to grant the foregoing Motion to Dismiss to any and all causes of action brought by Plaintiffs Jeff and Debbie Spano that survive preemption, on the grounds that they were not filed within the two-year limitations period prescribed by Texas Civil Practices and Remedies Code § 16.003.

42. Defendant prays the court find that any surviving products liability causes of action fall under the Texas Product Liability Act.

43. Defendant prays the Court find that Texas law applies to Plaintiffs' claims, and dismiss all claims brought under New York law.

44. Defendant prays the Court dismiss Plaintiffs' causes of action for "loss of consortium" and "vicarious liability" because these are not independent causes of action, and, furthermore, a parent cannot recover for "loss of consortium" for injuries to a child under either New York or Texas law.

45. Defendant prays the Court hold that Plaintiffs cannot recover for Debbie Spano's lost income or earning capacity based on injuries to C.S., as these types of damages are only recoverable where the person asserting lost income or earning capacity is also the same person who was injured.

46. Defendant prays the Court grant all other relief to which they may be entitled.

Respectfully submitted,

/s/ *Scott F. DeShazo*
Scott F. DeShazo
  State Bar No. 24011414
  sdeshazo@dnaustin.com
William T. Palmer
  State Bar No. 24121765
  wpalmer@dnaustin.com
DeShazo & Nesbitt L.L.P.
809 West Avenue
Austin, Texas  78701
Tel. 512-617-5560
Fax 512-617-5563


John H. Hempfling II
Texas Bar No. 24029609
John.Hempfling@wholefoods.com
Whole Foods Market Services, Inc.
828 W 6th Street
Austin, Texas 78703
Tel. 512-542-0213
Fax 512-482-7213

**COUNSEL FOR DEFENDANT
WHOLE FOODS MARKET GROUP, INC.**


## CERTIFICATE OF SERVICE

I certify the foregoing document has been served on the following counsel of record via electronic service through the Court's ECF system on the 2nd day of November, 2021.

David Rapp
Eggleston King LLP
102 Houston Ave., 3rd Floor
Weatherford. Texas  76086
david@ektexas.com


/s/ *Scott F. DeShazo*
Scott F. DeShazo